No. 15-2411

_____

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

Melody Owiannai Sayre, on behalf of herself and all others similarly situated,
Plaintiff - Appellant,

v.

Westlake Services, LLC d/b/a Westlake Financial Services,
Defendant - Appellee.

_____

On Appeal from the United States District Court for the District of Maryland
No. 1:15-cv-00687-JFM

_____

**BRIEF OF APPELLANT**

_____

CORY L. ZAJDEL
Z LAW, LLC
301 Main Street, Suite #2-D
Reisterstown, MD 21136
clz@zlawmaryland.com
(443) 213-1977
clz@zlawmaryland.com

Counsel for Plaintiff-Appellant

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-2411__       Caption: __Sayre v. Westlake Services, LLC d/b/a Westlake Financial Services__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Melody Sayre__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _Cory L. Zajdel, Esq._____        Date: ___November 16, 2015___

Counsel for: _Appellant Melody Sayre_____

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on __November 16, 2015__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_Cory L. Zajdel, Esq._____                ___November 16, 2015____
      (signature)                                              (date)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................iv

STATEMENT OF JURISDICTION.....................................................................1

STATEMENT OF THE ISSUE...........................................................................2

STATEMENT OF THE CASE..............................................................................3

STATEMENT OF THE FACTS ...........................................................................5

I.      SAYRE PURCHASED AND FINANCED A MOTOR
        VEHICLE FROM LIBERTY FORD ........................................................5

II.     THE BUYER'S ORDER ..........................................................................5

III.    THE SEPERATE ARBITRATION AGREEMENT ....................................6

IV.     THE RISC ..............................................................................................7

V.      LIBERTY FORD ASSIGNED THE RISC TO
        WESTLAKE FINANCIAL ......................................................................8

VI.     THE DISTRICT COURT'S DECISION ...................................................8

SUMMARY OF ARGUMENT ...........................................................................10

ARGUMENT .....................................................................................................12

STANDARD OF REVIEW ................................................................................12

I.      THE FAA..............................................................................................13

        A.      The FAA Policy Favoring Enforcing Arbitration Agreements
                Does Not Come Into Play in Determining Whether a
                Written Agreement to Arbitrate Exists ..............................13

i

B.     State Contract Law Applies to Determine Whether a Contract
       Containing a Written Arbitration Agreement was Formed ...............14

C.     Westlake Financial Has the Burden of Proving the Formation and
       Existence of a Written Arbitration Agreement ...................................15

II.    WESTLAKE FINANCIAL CANNOT ENFORCE THE ARBITRATION
       AGREEMENT BECAUSE THE ARBITRATION AGREEMENT IS
       NOT PART OF THE CONTRACT BETWEEN SAYRE
       AND WESTLAKE FINANCIAL ...............................................................16

A.     The Arbitration Agreement Was Entered into Only Between
       Sayre and Liberty Ford ......................................................................16

B.     The RISC Specifically Limits the Contractual Relationship Between
       Sayre and Any Assignee Such as Westlake Financial to the Front
       and Back of the RISC .........................................................................22

III.   TERMS OF THE ARBITRATION AGREEMENT UNFAIRLY
       RESTRICT SAYRE FROM VINDICATING HER RIGHTS, ARE
       AGAINST MARYLAND PUBLIC POLICY AND ARE
       UNCONSCIONABLE ...............................................................................24

A.     The Inability to Enforce an Arbitration Award ..................................24

B.     The Inability of Any Court to Review an Arbitration Award .............27

C.     Requiring a Consumer to Pay a Commercial Entity's Attorney
       Fees for Challenging a Contract Regardless of Whether the
       Commercial Entity Prevails Against the Challenge ............................29

CONCLUSION ....................................................................................................31

STATEMENT REGARDING ORAL ARGUMENT ............................................33

CERTIFICATE OF COMPLIANCE ....................................................................34

CERTIFICATE OF FILING AND SERVICE ......................................................35

ii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002)....................................13

*Alterra Healthcare Corp. v. Bryant*,
    937 So. 2d 263 (Fla. Dist. Ct. App. 2006).....................................28

*Atlantic Contracting & Material Company, Inc. v. Ulico Casualty Company*,
    844 A.2d 460, 380 Md. 285 (Md. 2004) ........................................30

*Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308 (11th Cir. 2005) ..................21

*Brensel v. Winchester Constr. Co.*,
    392 Md. 601, 898 A.2d 472 (Md. 2006) ........................................25

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)...........................13

*Calomiris v. Woods*, 353 Md. 425 (Md. 1999)........................................25

*Carson v. Giant Food, Inc.*, 175 F.3d 325 (4th Cir. 1999) ....................................13

*Covenant Health & R. of Picayune v. Lumpkin, v. Labor Ready, Inc.*,
    23 So. 3d 1092 (Miss. Ct. App. 2009)...........................................29

*Choice Hotels Intern. v. BSR Tropicana Resort*,
    252 F.3d 707 (4th Cir. 2001) ........................................................1

*Curtis G. Testerman Co. v. Buck*,
    340 Md. 569, 667 A.2d 649 (Md. 1995) ........................................14

*Equal Employment Opportunity Commission v. Waffle House, Inc.*,
    534 U.S. 279 (2002)......................................................................14

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995).............................14

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ..............................27

iii

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847 (2010) ....................14

*Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000) ..............31

*Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs., Ltd.*,
   346 Md. 122, 695 A.2d 153 (Md. 1997) ..........................................18, 19, 21

*Hoeft v. MVL Group, Inc.*, 343 F.3d 57 (2d Cir. 2003) ..............................26, 27, 28

*InterGen N.V. v. Grina*, 344 F.3d 134 (1st Cir. 2003)............................................18

*Johnson v. Circuit City Stores*, 148 F.3d 373 (4th Cir. 1998) ................................13

*Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166 (11th Cir. 2011) .........................18

*Mortgage Inv. v. Citizens Bank and Trust Co.*,
   366 A.2d 47, 278 Md. 505 (Md. 1976) ........................................................30

*Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009).........................18

*Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173 (4th Cir. 2013) ........................12, 31

*Myers v. Kayhoe*, 391 Md. 188, 892 A.2d 520 (Md. 2006)....................................30

*Opals on Ice Lingerie v. Bodylines, Inc.*, 320 F.3d 362 (2d 2003).........................15

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*,
   636 F.2d 51 (3d Cir. 1980) ..........................................................................15

*Perry v. Thomas*, 482 U.S. 483 (1987) .................................................................14

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*,
   991 F.2d 42 (2d Cir. 1993) ..........................................................................21

*Rota-McLarty v. Santander Consumer USA, Inc.*,
   700 F.3d 690 (4th Cir. 2012) ........................................................15, 20, 21

*Santoro v. Accenture Federal Services, LLC*, 748 F.3d 217 (4th Cir. 2014) ..........12

*Shaffer v. ACS Government Services, Inc.*,
   321 F. Supp. 2d 682 (D. Md. 2004) .............................................................15

*Shearson/Am. Express Inc. v. McMahon,* 482 U.S. 220 (1987) .............................27

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
   925 F.2d 1136 (9th Cir. 1991) .....................................................................15

*United States v. Brown*, 232 F.3d 399 (4th Cir. 2000) ...........................................12

*United States v. Layton*, 564 F.3d 330 (4th Cir. 2009) ..........................................12

*Walther v. Sovereign Bank*, 872 A.2d 735 (Md. 2005) ..........................................24

## STATUTES

9 U.S.C. § 1 ...........................................................................................................8

9 U.S.C. § 2 .........................................................................................................23

9 U.S.C. § 4 .........................................................................................................13

9 U.S.C. § 9 .........................................................................................................25

9 U.S.C. § 10 .......................................................................................................27

9 U.S.C. § 11 .......................................................................................................27

9 U.S.C. § 13 .......................................................................................................26

28 U.S.C. § 1291 ...................................................................................................1

28 U.S.C. § 1332 ...................................................................................................1

MD. CODE ANN., COMM. LAW § 12-1001 ...............................................................1

## RULES

FED. R. APP. P. 4.................................................................................1

FED. R. APP. P. 28.1...........................................................................34

FED. R. APP. P. 32.............................................................................34

FED. R. APP. P. 34.............................................................................33

FED. R. CIV. P. 56.............................................................................16

## UNPUBLISHED OPINIONS

*Armer v. OpenMarket, Inc.*, 2009 WL 2475136 (W.D. Wash. Jul. 27, 2009) ........18

## STATEMENT OF JURISDICTION

Appellant Melody Owiannai Sayre ("Sayre" or "Appellant"), filed a Class Action Complaint ("Complaint") in the Circuit Court of Maryland for Baltimore City against Appellee Westlake Services, LLC d/b/a Westlake Financial Services ("Westlake Financial" or "Appellee") alleging violations of *Maryland's Credit Grantors Closed End Credit Provisions* ("CLEC"), MD. CODE ANN., COMM. LAW §§ 12-1001 *et seq.* and breach of contract. Joint Appendix 5-13 (hereinafter "JA"). Westlake Financial removed the case to the United States District Court for the District of Maryland alleging jurisdiction under the Class Action Fairness Act of 2005 and specifically 28 U.S.C. 1332(d).

The District Court granted Westlake Financial's Motion to Compel Arbitration and Stay Proceedings ("Motion to Compel Arbitration") by entering a Memorandum Opinion and Order on September 30, 2015. JA 28-31. Judge Motz originally stayed the case pending arbitration, but later entered a final judgment dismissing the case in favor of an immediate appeal on November 12, 2015. JA 32. Appellant filed a timely Notice of Appeal on November 13, 2015. JA 33; FED. R. APP. P. 4(a)(4). This Court has jurisdiction pursuant to 28 U.S.C. § 1291. *Choice Hotels Intern. v. BSR Tropicana Resort*, 252 F.3d 707, 709-10 (4th Cir. 2001) (recognizing the District Court's authority to dismiss rather than enter a stay pending arbitration "when all of the issues presented in a lawsuit are arbitrable").

1

## STATMENT OF THE ISSUES

1.      Whether Appellee Westlake Financial has contractual authority to enforce an arbitration agreement entered into between Sayre and the originating car dealer that specifically limits its application to Sayre and the originating car dealer? [No.]

2.      Whether the arbitration agreement entered into between Sayre and the originating car dealer unfairly restricts Sayre from vindicating her federal rights by making it impossible for a party to a contract to enforce an arbitration award? [Yes.]

3.      Whether the arbitration agreement entered into between Sayre and the originating car dealer unfairly restricts Sayre from vindicating her federal rights by making it impossible for any court or arbitrator to review the arbitrator's award? [Yes.]

4.      Whether the arbitration agreement is against Maryland public policy or unconscionable by requiring an individual challenging the validity of the arbitration agreement to pay the opposing parties attorney fees regardless of whether the opposing party prevails?  [Yes.]

## STATEMENT OF THE CASE

This consumer class action was filed by Appellant against Westlake Financial alleging multiple violations of CLEC for repossessing and selling Appellant's motor vehicle without providing her with statutorily required adequate notice. Westlake Financial alleged and argued that the case between the parties was subject to a binding written and enforceable arbitration agreement that Sayre entered into with Deer Automotive Group, LLC d/b/a Liberty Ford ("Liberty Ford"). Sayre denied that Westlake had any authority to pursue arbitration under the arbitration agreement she entered into with Liberty Ford. In addition, Sayre argued that the arbitration agreement unfairly restricts Sayre from vindicating her federal rights because the arbitration agreement does not allow Sayre to enforce an arbitration award, does not allow a court to review the arbitrator's award and required Sayre to pay all of Westlake Financial's attorney's fees for challenging the arbitration agreement in court regardless of whether Westlake Financial was successful in compelling arbitration under the contract. The United States District Court for the District of Maryland in a two page opinion ruled that Westlake Financial could enforce the arbitration agreement entered into between Sayre and Liberty Ford and that the provisions limiting Sayre's ability to enforce or seek review of an arbitrator's award were not unconscionable or against public policy,

but even if these provisions were against public policy, only those provisions would be void not the entire arbitration agreement.

The issues on appeal relate to whether Westlake Financial has authority to enforce the arbitration agreement between Sayre and Liberty Ford and whether the provisions in the arbitration agreement precluding Sayre from enforcing or seeking review of an arbitrator's award or requiring Sayre to pay Westlake Financial's attorney fees simply for challenging the arbitration agreement makes the entire arbitration agreement void as against public policy.  Appellant appeals the District Court's decision dismissing the case.

## STATEMENT OF THE FACTS

### I. SAYRE PURCHASED AND FINANCED A MOTOR VEHICLE FROM LIBERTY FORD

Appellant is a Maryland consumer who purchased a motor vehicle from Liberty Ford on January 3, 2011.  JA 8 at ¶ 20.  In connection with the purchase of the motor vehicle, Sayre entered into a Buyer's Order that mentions a separate arbitration agreement and entered into the separate Arbitration Agreement to Arbitrate Disputes ("Arbitration Agreement").  JA 24-5.  After agreeing to purchase the vehicle through the Buyer's Order, Plaintiff entered into a Retail Installment Sale Contract ("RISC") with Liberty Ford to finance the purchase of the motor vehicle.  JA 8 at ¶ 21.

### II. THE BUYER'S ORDER

The Buyer's Order for the purchase of the motor vehicle was between "Purchaser" (Sayre) and "Dealer" (Liberty Ford).  JA 24-5.  The Buyer's Order refers Sayre to a "SEPERATE ARBITRATIOIN AGREEMENT FOR IMPORANT INFORMATION ON YOUR RIGHTS AS TO RESOLVING DISPUTES, CONTROVERSIES OR CLAIMS ARISING FROM THIS [BUYER"S] ORDER."  JA 24 (emphasis in original).  The reverse side of the Buyer's Order states that "[t]he parties irrevocably agree that any controversy, claim or dispute arising out of or relating to the purchase or the financing of this vehicle including but not limited to this Purchase Agreement or the breach thereof

5

shall be settled by binding arbitration, pursuant to the separate Agreement to Arbitrate Disputes. []SEE SEPERATE ARBITRATION AGREEMENT ATTACHED HERETO AND INCORPORATED BY REFERENCE HEREIN FOR SPECIFIC DETAILS." JA 25 (emphasis in original). The Buyer's Order does not refer to or contemplate any third-party or assignee.

## III. THE SEPERATE ARBITRATION AGREEMENT

The Arbitration Agreement signed by the "Purchaser" (Sayre) and "Dealer" (Liberty Ford) states that "*Purchaser* and *Dealer* agree that if any controversy, claim or dispute arise out of or relates to the purchase and/or financing of the vehicle, including any negotiations or applications for credit or other dealings or interactions *with the Dealership*, the controversy, claim or dispute will be resolved by binding arbitration . . . ." JA 27 (emphasis added). In addition, "the *Purchaser* and *Dealer* further agree that *neither party* initiate or commence any action in any court without first submitting the controversy, claim or dispute to arbitration . . . . *Dealer* will advance *Purchasers* filing, commencement, administrative fee, and arbitrator or hearing fee all up to a maximum of $300.00." *Id.* (emphasis added) (referring repeatedly to two parties in the Arbitration Agreement as "Buyer" and "Dealer"; also stating "neither party" and using the phrase "either party").[1] The Arbitration Agreement requires Sayre to pay all attorney's fees related to

---

[1] Other relevant provisions of the Arbitration Agreement will be discussed in the Argument section below.

6

challenging the arbitration agreement regardless of whether she prevails or not ("[i]n the event that either party shall initiate or commence an action in any court without first submitting the controversy, claim or dispute to arbitration, the party initiating or commencing such action agrees to pay all costs and expenses, including reasonable attorney fees incurred to enforce this Agreement to Arbitrate"), removes any ability to enforce an arbitration award ("[j]udgment on an award may be entered by either party in the highest local, state, or federal court or before any administrative body") and denies any party the right to appellate review of an arbitration award ("[a]n award by the arbitrator shall be final and binding on all parties to the proceeding and is not appealable to any court or other body").  *Id.*  The Arbitration Agreement does not refer to or contemplate any third-party or assignee.

## IV.    THE RISC

After agreeing to purchase the motor vehicle on January 3, 2011, Appellant entered into a Retail Installment Sale Contract ("RISC") with Liberty Ford in order to finance the purchase of the motor vehicle.  JA 8 at ¶ 21; JA 22-3.  The RISC specifically states that "[b]y signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract."  JA at 22 (stating that "you" refers to "the Buyer" [Sayre], "we" or "us" refers to the Creditor-Seller [Liberty Ford] and "this contract" refers to the RISC).  Moreover,

"[t]his contract, along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement between you and us affecting this purchase . . . .   Upon assignment of this contract: (i) only this contract and the addenda to this contract comprise the entire agreement between you and the assignee relating to this contract[.]"  *Id.*

## V.    LIBERTY FORD ASSIGNED THE RISC TO WESTLAKE FINANCIAL

The RISC was later assigned to Appellee Westlake Financial.  JA 8 at ¶ 24; and JA 22 ("Seller assigns its interest in this contract to WESTLAKE FINANCIAL SERVICES (Assignee)").  The RISC specifically refers to Westlake Financial as the "assignee[.]"  JA 8 at ¶ 24; JA 22.  Westlake Financial received payments from Sayre from time to time.  JA 8 at ¶¶ 27-8.  Westlake Financial repossessed the motor vehicle purchased from Liberty Ford on May 7, 2014.  JA 8 at ¶ 29.  This underlying allegations related to this appeal involve Appellee's alleged failure to provide adequate notices related to the repossession and subsequent sale of the motor vehicle.  JA 8-9 at ¶¶ 30-4.

## VI.    THE DISTRICT COURT'S DECISION

The United States District Court for the District of Maryland held that as "an assignee of the retail installment sales contract, which incorporated by reference the other documents signed by plaintiff[,]" Westlake Financial was entitled to enforce the arbitration agreement under the Federal Arbitration Act ("FAA"), 9

U.S.C. § 1, *et seq*.  JA 28-9.  The District Court also held that even if the lack of an enforcement remedy or the preclusion of judicial review of any arbitration award were against public policy only those provisions contained within the arbitration agreement would be void as a matter of public policy rather than the entire agreement.  JA 29.  Finally, the Court held that there is nothing unconscionable about requiring a losing party in an arbitration forum to pay the prevailing party's reasonable attorney fees.  The Court, however, completely failed to consider whether it was against public policy or unconscionable for a contract (in this case an arbitration agreement) to require an individual challenging the validity of the contract to pay the opposing parties attorney fees regardless of whether the opposing party prevails.

Based on these reasons, Judge J. Frederick Motz entered an Order granting Westlake's Motion to Compel Arbitration and entered a stay in the litigation.  JA 31.  Subsequently, Judge Motz lifted the stay entered and dismissed the case as requested by Sayre.  JA 32.

## SUMMARY OF ARGUMENT

The questions before the Court on appeal relate to an Arbitration Agreement entered into between Appellant Sayre and a car dealer Liberty Ford.  Westlake Financial asserted that it could enforce the separate Arbitration Agreement as the assignee of a RISC.  Sayre argues that Westlake Financial does not have contractual authority to enforce the Arbitration Agreement because the Arbitration Agreement is not part of the contract between Sayre and Westlake Financial.  Specifically, Westlake Financial is not a party to the Buyer's Order or the Arbitration Agreement and the exacting language used in the Buyer's Order and Arbitration Agreement do not indicate any intent to allow anyone other than Sayre or Liberty Ford to be bound by it.

In addition, Sayre argues that even if Westlake Financial had contractual authority to enforce the Arbitration Agreement, the Arbitration Agreement is void because it unfairly restricts Sayre from enforcing an arbitration award (there is no mechanism to enter judgment in the United States Supreme Court or in the Court of Appeals of Maryland), restricts any court from reviewing an arbitration award (Sayre is unable to vindicate her federal rights under the FAA for judicial review of an arbitrator's award) and requires Sayre to pay Westlake Financial's attorney fees for challenging the Arbitration Agreement in court regardless of whether Westlake Financial prevails against the challenge (drastic overreach from the

10

"American Rule" regarding contractual fee shifting).  Therefore, the District Court had no authority to compel Sayre to resolve any disputes through binding arbitration under the FAA.

# ARGUMENT

## STANDARD OF REVIEW

This Court reviews "*de novo* [any] district court's judgment compelling arbitration, as well as any questions of state contract law concerning the validity of the arbitration agreement." *Santoro v. Accenture Federal Services, LLC*, 748 F.3d 217 (4th Cir. 2014) (*citing Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 178 (4th Cir. 2013)). This Court reviews *de novo* a district court's determinations related to questions of law and legal conclusions. *United States v. Brown*, 232 F.3d 399, 403 (4th Cir. 2000); *United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009).

## I.     THE FEDERAL ARBITRATION ACT

A United States District Court can only compel arbitration under the FAA when the moving party meets its burden of proving "a written agreement that includes an arbitration provision that purports to cover the dispute[.]"  *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002).  A United States District Judge cannot enter an order compelling arbitration until "satisfied that the making of the [written] agreement for arbitration . . . is not in issue[.]"  FAA § 4; *see Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1998) ("Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination").

### A.     The FAA Policy Favoring Enforcing Arbitration Agreements Does Not Come Into Play in Determining Whether a Written Agreement to Arbitrate Exists

Courts have interpreted the policy of the FAA to favor enforcing written arbitration agreements after it is proven that a written arbitration agreement exists between the parties. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  But this policy favoring arbitrating claims under the FAA does not arise until after the moving party proves that a written arbitration agreement exists between the parties.  *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999) (stating that the general policy favoring arbitrating claims does not "apply to the issue of which claims are arbitrable").  The United States Supreme Court has rejected the suggestion that the policy favoring arbitration under the FAA should

13

be considered in determining whether the parties to a contract agreed to arbitrate the dispute at issue. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2850 (2010) (stating that courts must decide motions to compel arbitration by "applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand"); *Equal Employment Opportunity Commission v. Waffle House, Inc.*, 534 U.S. 279 (2002); *Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 667 A.2d 649, 654-665 (Md. 1995) (finding that under FAA "an arbitration clause is only 'liberally read' when an arbitration agreement in fact exists"). Accordingly, the Court must not provide any weight to the FAA policy favoring enforcing written arbitration agreements until the Court determines that Westlake has contractual authority to enforce the written arbitration agreement against Sayre.

B.   State Contract Law Applies to Determine Whether a Contract Containing a Written Arbitration Agreement was Formed

The question of whether parties have entered into an agreement to arbitrate is resolved through application of general state contract law principles that govern the formation of any contractual agreement. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("[w]hen deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts"); *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) ("state law, whether of legislative or judicial origin, is applicable *if*

that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally") (emphasis in original); *Rota-McLarty v. Santander Consumer USA, Inc.,* 700 F.3d 690, 697 (4th Cir. 2012) ("the question of whether an enforceable [arbitration] agreement exists between [the parties] is a matter of contract interpretation governed by state law").

C.    Westlake Financial has the Burden of Proving the Formation and Existence of a Written Arbitration Agreement

The moving party has the burden of proving that an enforceable and valid written arbitration agreement between the parties was formed and exists. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1139-41 (9th Cir. 1991); *Opals on Ice Lingerie v. Bodylines, Inc.*, 320 F.3d 362 (2d Cir. 2003) (holding that arbitration clause of a contract was not enforceable because the party seeking to enforce had not demonstrated that a contract had been created). The burden is substantial and requires summary judgment type proof. *Shaffer v. ACS Government Services, Inc.*, 321 F. Supp. 2d 682, 683-84 and 688 (D. Md. 2004) (denying motion to compel arbitration on the record before the court because the court was not convinced that the "parties actually entered into an agreement to arbitrate"); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980) ("when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, [the district court] should give to the opposing party the benefit of all reasonable doubts

15

and inferences that may arise").  Accordingly, Westlake Financial had the burden

of proving that a written arbitration agreement was formed between Sayre and

Liberty Ford and that Westlake Financial could enforce the written arbitration

agreement against Sayre in accordance with FED. R. CIV. P. 56 type proof.

## II.  WESTLAKE FINANCIAL CANNOT ENFORCE THE ARBITRATION AGREEMENT BECAUSE THE ARBITRATION AGREEMENT IS NOT PART OF THE CONTRACT BETWEEN SAYRE AND WESTLAKE FINANCIAL

The Buyer's Order and Arbitration Agreement never mention any assignee

or third-party beneficiary of these contracts.  The RISC contemplates an assignee

but specifically limits the assignee's rights to the front and back of the RISC.

Moreover, the RISC specifically excludes an assignee of the RISC from enforcing

the Arbitration Agreement between Sayre and Westlake Financial.

### A.    The Arbitration Agreement Was Entered into Only Between Sayre and Liberty Ford

In order for Westlake Financial to enforce the Arbitration Agreement,

Westlake Financial had the burden of establishing that Sayre and Liberty Ford

intended to provide an unnamed third-party the right to enforce the Arbitration

Agreement.  The Buyer's Order was entered into between "Purchaser" (Sayre) and

"Dealer" (Liberty Ford).  JA 24.  The Buyer's Order refers to a separate Arbitration

Agreement which is specifically limited to "RIGHTS AS TO RESOLVING

DISPUTES, CONTROVERSIES OR CLAIMS ARISING FROM THIS

16

[BUYER'S] ORDER." JA 24. The Arbitration Agreement was entered into between "Purchaser" (Sayre) and "Dealer" (Liberty Ford) and signed by the same. The Arbitration Agreement states that "*Purchaser and Dealer agree* that if any controversy, claim or dispute arise out of or relates to the purchase and/or financing of the vehicle, including any negotiations or applications for credit *or other dealings or interactions with the Dealership*, the controversy, claim or dispute will be resolved by binding arbitration . . . ." JA 27 (emphasis added). In addition the Arbitration Agreement between Sayre and Liberty Ford states that:

> the Purchaser and Dealer further agree that neither party initiate or commence any action in any court without first submitting the controversy, claim or dispute to arbitration. In the event that *either party* shall initiate or commence an action in any court without first submitting the controversy, claim or dispute to arbitration, *the party* initiating or commencing such action agrees to pay all costs and expenses [of the other party]. *Dealer* will advance *Purchasers* filing, commencement, administrative fee, and arbitrator or hearing fee all up to a maximum of $300.00.

*Id.* (emphasis added) (referring repeatedly to two parties in the Arbitration Agreement as "Buyer" and "Dealer[;]" also stating "neither party" and using the phrase "either party").

It is clear that the Buyer's Order and Arbitration Agreement (JA 24-5 and 27) are contracts that only refer to Sayre as the "Buyer" and Liberty Ford as the "Dealer" and do not refer to or contemplate any other third-party or assignee with

17

respect to the Buyer's Order or Arbitration Agreement. Accordingly, Westlake Financial as assignee cannot enforce the Arbitration Agreement because it is not a party to the Buyer's Order or the Arbitration Agreement and the exacting language used in these contracts does not indicate any intent to allow anyone other than Sayre or Liberty Ford to be bound by it.

The Maryland Court of Appeals has already been presented with this identical situation and held that a non-signatory third-party not specifically identified or designated in the original contract containing an arbitration agreement cannot enforce the terms of the arbitration agreement even where the arbitration agreement is fully integrated into a subsequent contract.[2] *Hartford Accident &*

---

[2] Numerous courts have held that a third-party non-signatory has no right to enforce an arbitration agreement against a signatory to an arbitration agreement unless the arbitration agreement specifically identifies the third-party non-signatory's right to enforce the arbitration agreement. *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1171-72 (11th Cir. 2011) (interpreting arbitration clause stating that either "you" (defined as the purchaser) or "we" (defined as including the car dealership, the original lender and any assignee of the contract) can compel arbitration to exclude any other third party from enforcing the agreement); *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (holding that arbitration agreement only applied to disputes between the borrower and the lender of a loan secured by a life insurance policy; insurer could not compel arbitration under the agreement that was between "the Bank and me"); *InterGen N.V. v. Grina*, 344 F.3d 134, 146 (1st Cir. 2003) (stating that the arbitration agreement was limited to a defined buyer and seller and did not evince an intent to benefit third-parties because "the law requires 'special clarity' to support a finding that the contracting parties intended to confer a benefit on a third party"); and *Armer v. OpenMarket, Inc.*, 2009 WL 2475136, at *2 n.3 (W.D. Wash. Jul. 27, 2009) (holding that third party could not enforce an arbitration agreement that was limited to disputes "against each other," meaning the parties to the agreement).

*Indem. Co. v. Scarlett Harbor Assocs., Ltd.*, 346 Md. 122, 695 A.2d 153 (Md. 1997).   In *Hartford*, a construction contractor   and a condominium developer entered into a contract containing an arbitration clause stating that the parties shall submit "[a]ll claims, disputes and other matters in question between the *Contractor* and the *Owner* arising out of or relating to the Contract Documents or the breach thereof" to binding arbitration.  *Id.* at 154 (emphasis added).  The contract referred to the construction contractor as "Contractor" and the condominium developer as "Owner[.]"  The construction contractor later entered into a second contract with a bonding company that did not include any specific arbitration clause but did fully integrate the contract between the construction contractor and the condominium owner.  Both the condominium owner and the bonding company moved to compel arbitration of any claims related to the construction contractor.  The trial court ordered arbitration between the construction contractor ("Contractor") and condominium developer ("Owner") but refused to compel arbitration between the construction contractor and the bonding company.  The Maryland Court of Appeals reasoned that the contract between the construction contractor and condominium developer "contains a provision whereby those two parties agree to arbitrate with each other . . . .  By incorporating into the [second contract] the contract that contains [the construction contractor's] promise to arbitrate with [the condominium developer], the [bonding company] literally has incorporated as to

19

[the construction contractor] only [the construction contractor's] promise to arbitrate with [the condominium developer]."  For this reason, the Maryland Court of Appeals affirmed these rulings because "there is no agreement by [the construction contractor] to arbitrate with the [bonding company]."  *Id.* at 157.

The United States Court of Appeals for the Fourth Circuit has also commented on *Hartford* and a subsequent consumer's argument that an arbitration agreement entered into between the consumer and a car dealer as part of the buyer's order did not provide a subsequent assignee any contractual rights under the arbitration agreement.  *Rota-McLarty v. Santander Consumer USA, Inc.,* 700 F.3d 690, 700 (4th Cir. 2012).  The Fourth Circuit pointed out that the holding in "*Hartford* that the parties did not intend the arbitration provision, specifically, to govern their agreement" was distinguishable from *Rota-McLarty*, because the Buyer's Order containing the arbitration agreement in the *Rota-McLarty* transaction specifically "states that it applies to the assignee of the RISC[.]"  *Rota-McLarty*, 700 F.3d at 700 and n.9 (quoting the arbitration agreement as stating that "[t]he parties understand that they have a right or opportunity to litigate disputes through a Court, but that they prefer to resolve their disputes through arbitration, except that the Dealer (or the Assignee of any Retail Installment Sales Contract) may

20

proceed with Court action in the event the Purchaser fails to pay any sums due under the Agreement").[3]

Sayre's transaction with Liberty Ford is more similar to the facts in *Hartford* than the facts in *Rota-McLarty*. Just as in *Hartford*, the Buyer's Order and Arbitration Agreement relate only to Sayre and Liberty Ford and never mention Westlake Financial. JA 24-5 and 27. Therefore, even if the Buyer's Order and Arbitration Agreement were incorporated into the RISC (which they were not as described in the following section), the Arbitration Agreement literally only requires Sayre and Liberty Ford to arbitrate disputes against each other. *Hartford*, 695 A.2d at 154-57. In addition, the Buyer's Order and Arbitration Agreement never refer to or contemplate any assignee or successor to any RISC as the buyer's order in *Rota-McLarty* specifically did. Westlake is not a party to the Buyer's Order or the Arbitration Agreement entered into between Sayre and Liberty Ford

---

[3] Courts have held that a third-party non-signatory has a right to enforce an arbitration agreement against one of the original signatories only when the arbitration agreement is drafted broadly enough to include the non-signatory or where the arbitration agreement specifically identifies the third-party non-signatory's right to enforce the arbitration agreement. *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005) (concluding that provision including claims arising from "the relationship . . . result[ing] from the [agreement]," was broad enough to allow non-signatory third party to invoke arbitration agreement against signatory); *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 47-8 (2d Cir. 1993) (finding that a contract that uses the term "parties" generically will not exclude a non-signatory from enforcing an arbitration agreement against a signatory but also stating that an arbitration agreement that identifies specific parties may limit enforcement to those specified parties).

and there is no evidence that either Sayre or Liberty Ford intended an assignee to benefit from the exacting language included in the Buyer's Order and Arbitration Agreement.  For this reason, Westlake Financial cannot enforce either agreement.

B.    The RISC Specifically Limits the Contractual Relationship Between Sayre and Any Assignee Such as Westlake Financial to the Front and Back of the RISC

Westlake Financial took assignment of a RISC that specifically excludes the Buyer's Order and Arbitration Agreement with respect to any assignee.  JA 8 at ¶ 24 ("Seller assigns its interest in this contract to WESTLAKE FINANCIAL SERVICES (Assignee)"); and JA 22.  The RISC states that "[b]y signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract."  JA 22 (stating that "you" refers to "the Buyer" [Sayre]; "we" or "us" refers to the Creditor-Seller [Liberty Ford]; and "this contract" refers to the RISC).  Moreover, "[t]his contract, along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement between you and us affecting this purchase . . . .  Upon assignment of this contract: (i) only this contract and the addenda to this contract comprise the entire agreement between you and the assignee relating to this contract[.]"  *Id.*

The term "this contract" as used in the RISC refers only to the front and back of the RISC.  The term "this contract" refers to the front and back of the RISC regardless of whether the RISC is referring to Liberty Ford or any assignee.  On

the other hand, the RISC has two different definitions of "entire agreement" depending on whether the clause relates to Liberty Ford or an "assignee" of the RISC. With respect to Liberty Ford, the term "entire agreement" refers to both the RISC and any other signed document (including the Buyer's Order and Arbitration Agreement). *Id.* With respect to any assignee, the "entire agreement" only refers to the front and back of the RISC and does not include any other signed documents unless they are addenda to the RISC. *Id.* ("Upon assignment of this contract: (i) only this contract and the addenda to this contract comprise the entire agreement between you and the assignee relating to this contract[.]").

It is undisputed that the Buyer's Order and Arbitration Agreement are "other documents signed by you in connection with the purchase of this vehicle" and therefore fall under the definition of "entire agreement" with respect Liberty Ford. JA 22. On the other hand, there is no evidence that the Buyer's Order or Arbitration Agreement are addenda to the RISC nor is there any basis to believe this is the case. JA 22. For this reason, Westlake Financial as assignee cannot enforce the Arbitration Agreement because the Arbitration Agreement does not fall within the assignee's definition of "entire agreement" in the RISC.

### III.   TERMS OF THE ARBITRATION AGREEMENT UNFAIRLY RESTRICT SAYRE FROM VINDICATING HER RIGHTS, ARE AGAINST MARYLAND PUBLIC POLICY AND ARE UNCONSCIONABLE

The FAA does not require a reviewing court to uphold the enforcement of an arbitration agreement when there are "grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Consumers can challenge arbitration agreements when a contract is against Maryland's public policy or unconscionable. *Walther v. Sovereign Bank*, 872 A.2d 735 (Md. 2005) ("an arbitration agreement may be challenged on grounds of unconscionability").

### A.   The Inability to Enforce An Arbitration Award

The Arbitration Agreement extinguishes any possibility of recovering money from an arbitration award by limiting where Sayre can enter judgment on the arbitration award:

> [j]udgment on an award may be entered by either party in the highest local, state, or federal court or before any administrative body.

JA 27.  Plainly read, this clause in the Arbitration Agreement only allows Sayre to request the Maryland Court of Appeals, the United States Supreme Court or an administrative body to enter a judgment on the arbitrator's award.[4]

---

[4]  Judge Motz understood that the plain meaning of the Arbitration Agreement meant that Sayre would be left without any ability to have a judgment entered on an arbitration award.  Nonetheless, Judge Motz states that the "arbitration agreement could have been better worded" and "it appears that what

24

the agreement means is that the arbitration award should be filed with the 'highest' court of any state which has a mechanism to allow an arbitration award to be entered as a judgment."  JA 29.  Undoubtedly, Judge Motz's interpretation of the clause at issue rewrites the Arbitration Agreement in an effort to save the Arbitration from failure due to public policy concerns.  This is directly contrary to Maryland law:

> It is a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships.'  Contracts play a critical role in allocating the risks and benefits of our economy, and courts generally should not disturb an unambiguous allocation of those risks in order to avoid adverse consequences for one party. In the absence of fraud, duress, mistake, or some countervailing public policy, courts should enforce the terms of unambiguous written contracts without regard to the consequences of that enforcement. Thus, as noted above, the court has no choice but 'to presume that the parties meant what they expressed,' and it may not look to 'what the parties thought that the agreement meant or intended it to mean.'

*Calomiris v. Woods*, 353 Md. 425 (Md. 1999) (internal citations omitted); *see Brensel v. Winchester Constr. Co.*, 392 Md. 601, 624, 898 A.2d 472, 485 (Md. 2006) (stating that a court will not "add or delete words to achieve a meaning not otherwise evident from a fair reading of the language used").  The Arbitration Agreement, like all contracts controlled by Maryland law, must be interpreted as they are written and not what the Court thinks one party wanted or "intended it to mean."  *Calomiris*, 353 Md. 425.  While Judge Motz states that the clause intended to mean the highest court a judgment could be filed, it is just as likely that Liberty Ford included this clause in its Arbitration Agreements to deter consumers from pursuing any form of action to recover damages from Liberty Ford.  The latter interpretation is more consistent with the remainder of the Arbitration Agreement that also restricts bringing an action in Court, removes the possibility of punitive damages and bans class action arbitrations.  Nonetheless, it was improper for Judge Motz to interpret the contract based on what he thought Liberty Ford "intended it to mean."  *Calomiris*, 353 Md. 425.

25

The FAA § 9 recognizes that a party must have the ability to file an arbitration award in a Court that has the ability to enroll the arbitration award as a judgment:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

*See also* FAA § 13 (requiring that any judgment entered in the USDC based on an arbitration award "shall be docketed as if it was rendered in an action . . . and have the same force and effect [as] if it had been rendered in an action in the court in which it is entered"). In Maryland, there are no local courts. The highest state court is the Court of Appeals of Maryland and the highest federal court is the Supreme Court of the United States of America. Neither the Court of Appeals of Maryland or the Supreme Court of the United States have a mechanism to allow an arbitration award to be entered as a judgment. In addition, Plaintiff is not aware of any mechanism for Plaintiff to enter judgment on an arbitration award in front of any administrative body. An arbitration award is a worthless piece of paper without the ability to convert the arbitration award into a judgment. *Hoeft v. MVL*

*Group, Inc.*, 343 F.3d 57, 63 (2d Cir. 2003) (stating that "[a]rbitration awards are not self-enforcing").  Only with a judgment can the prevailing party in the arbitration request discovery in aid of execution, seize property, garnish wages and bank accounts or place liens on property.

Since the Arbitration Agreement provides no real means for Sayre to enforce an arbitration award by completely restricting a prevailing party from confirming the award or having a judgment entered on the award, the Arbitration Agreement is in direct contradiction to the rights granted by the FAA allowing a person to enroll an award by an arbitrator as a judgment in the United States District Court.  The Arbitration Agreement is void due to public policy and unconscionable as it unfairly restricts Sayre from vindicating her rights.

B.     The Inability of Any Court to Review an Arbitration Award

The Arbitration Agreement extinguishes any possibility of appealing an award made by the arbitrator:

> [a]n award by the arbitrator shall be final and binding on all parties to the proceeding and is not appealable to any court or other body.

JA 27.  Although the Arbitration Agreement disallows any review of the arbitrators initial written opinion and award, the FAA specifically recognizes a right to judicial review of an arbitration award.  9 U.S.C. § 10 (permitting the USDC to vacate an arbitration award or order a rehearing of an arbitration); and 9 U.S.C. §

11 (permitting the USDC to modify or correct an arbitration award). The United States Supreme Court has stated that "'although judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute' at issue." *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 32 n.4, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) (quoting *Shearson/Am. Express Inc. v. McMahon,* 482 U.S. 220, 232, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)); *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 63-4 (2d Cir. 2003) (stating that the FAA contains a "confirmation-and-vacatur safety net" and each arbitration award must be reviewed under a manifest disregard of the law standard). These rights related to judicial review of an arbitrator's award "represent a floor for judicial review of arbitration awards below which parties cannot require courts to go, no matter how clear the parties' intentions." *Hoeft*, 343 F.3d at 64 (stating further that "parties may not, by private agreement, relieve [federal courts] of their obligation to review arbitration awards for compliance with [FAA] § 10"); *Alterra Healthcare Corp. v. Bryant*, 937 So. 2d 263 (Fla. Dist. Ct. App. 2006) (finding that "the complete waiver of a right to appeal any arbitration decision . . . is unenforceable as contrary to public policy").

Westlake Financial's attempt to confiscate the statutory right to review of the arbitrator's award that is applicable to all arbitration agreements under the FAA

makes the Arbitration Agreement in this case void due to public policy and unconscionable.

      C.    Requiring a Consumer to Pay a Commercial Entity's Attorney Fees for Challenging a Contract Regardless of Whether the Commercial Entity Prevails Against the Challenge

The Arbitration Agreement requires Sayre "to pay all costs and expenses, including reasonable attorney fees incurred to enforce this Agreement to Arbitrate" since she initiated an action in court.  JA 27.  Therefore, regardless of whether the Court finds that Westlake Financial has the authority to enforce the Arbitration Agreement, Sayre's act in filing her litigation in court and challenging the validity of the contract automatically requires Sayre to pay for all of Westlake Financial's efforts to enforce the Arbitration Agreement.  A similar clause was previously held to be unconscionable.  *Covenant Health & R. of Picayune v. Lumpkin*, 23 So. 3d 1092 (Miss. Ct. App. 2009) (refusing to enforce arbitration agreement as unconscionable where the consumer was required to pay for the commercial entities actions in attempting to enforce an arbitration agreement).

The challenged clause from the Arbitration Agreement is different than most clauses placed in Maryland contracts providing for fee shifting wherein the losing party is required to pay the prevailing party's attorney fees.  Maryland follows the "American Rule" that a party is not ordinarily entitled to recover attorney's fees unless a contract provides for the recovery of fees and costs to the prevailing party.

*Myers v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520, 532 (Md. 2006) ("[c]ontract provisions providing for awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable . . . ."). The challenged clause does not require Westlake Financial to prevail on its efforts to enforce the Arbitration Agreement. Rather, the attorney fee shifting provision is applicable solely due to Sayre's filing of a Complaint in court rather than initiating an arbitration proceeding. JA 27.

In Maryland, a contract provision for attorney's fees will be enforced unless there is evidence of "misconduct or fraud, *overreaching*, misrepresentation, or other grounds for voiding the contract[.]" *Atlantic Contracting & Material Company, Inc. v. Ulico Casualty Company*, 844 A.2d 460, 380 Md. 285 (Md. 2004) (emphasis added). The Maryland Court of Appeals has stated that it would not be reluctant to find "overreaching" in a contractual "fee arrangement between parties of dissimilar knowledge or background[.]" *Mortgage Inv. v. Citizens Bank and Trust Co.*, 366 A.2d 47, 278 Md. 505 (Md. 1976). The Arbitration Agreement in this litigation is void due to the public policy of protecting Maryland citizens from "overreaching" and is unconscionable because it requires the payment of attorney's fees regardless of whether the party enforcing the Arbitration Agreement prevails.[5]

---

[5] With respect to the unconscionability of the attorney fees provision, Sayre

30

# CONCLUSION

Westlake Financial cannot enforce the Arbitration Agreement because it is not part of the contract between Sayre and Westlake Financial. Moreover, even if Westlake Financial had contractual authority to enforce the Arbitration Agreement, the Arbitration Agreement is void because it unfairly restricts Sayre from enforcing an arbitration award, restricts any court from reviewing an arbitration award and requires Sayre to pay Westlake Financial's attorney fees for challenging the Arbitration Agreement in court regardless of whether Westlake Financial prevails against the challenge. For these reasons and the arguments set forth herein, Appellant Sayre requests that this Court reverse the Order Granting Westlake Financial's Motion to Compel Arbitration (JA 31) and remand this case back to the United States District Court for the District of Maryland for further proceedings.

---

argued that the form Buyer's Order and form Arbitration Agreement are adhesion contracts and the costs solely associated with arbitration rather than proceeding in court make the Arbitration Agreement cost prohibitive especially in light of the value of her relatively small individual claim. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000); and *Muriithi*, 712 F.3d 173 (requiring consumer to place specific evidence before the court to prove arbitration would be cost prohibitive such as the "fees and costs of arbitration . . . and the difference in cost between arbitration and litigation"). In order to make these arguments, Sayre requested the depositions of Liberty Ford (to provide information related to Liberty Ford's practices and procedures regarding changes to the Buyer's Order and Arbitration Agreement) and Westlake Financial's counsel (to provide an accurate attorney fees assessment associated with enforcing the Arbitration Agreement). District Court Docket #23 at 16 n.8 and 20. Sayre requests the Court remand the attorney fees issue to develop a factual record regarding unconscionability.

31

Respectfully submitted this 28th day of December, 2015.

                        **/s/   Cory L. Zajdel**

                        Cory L. Zajdel, Esq.
                        Z LAW, LLC
                        301 Main Street, Ste. 2-D
                        Reisterstown, Maryland 21136
                        clz@zlawmaryland.com
                        (443) 213-1977

                        **Attorney for Appellant**

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to FEDERAL RULE OF APPELLATE PROCEDURE 34, Appellant respectfully requests oral argument. This case presents an important issue that relates to Maryland contract law and its application to the FAA. More specifically, whether a non-signatory to an arbitration agreement has authority to enforce that arbitration agreement that was entered into between two specifically named parties. Moreover, this appeal concerns whether a commercial entity can restrict a consumer from vindicating federal rights provided under the Federal Arbitration Act by contractual agreement and whether the limitations placed on these federal rights void the arbitration agreement.

The questions at issue in this case are complex and involve the interpretation of state contract law as they pertain to the FAA. In light of the far-reaching implications of these issues, Appellant respectfully request the opportunity to present oral argument in this matter.

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of FED. R. APP. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 7,139 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using *Microsoft Office Word 2007* in *14pt Times New Roman*.

Dated: December 28, 2015

   /s/   **Cory L. Zajdel**       
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 28th day of December, 2015, I caused this Opening Brief of Appellant and the Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Gerard J. Gaeng
Harris W. Eisenstein
Rosenberg Martin Greenberg, LLC
25 S. Charles Street, 21st Floor
Baltimore, MD 21201
ggaeng@rosenbergmartin.com
heisenstein@rosenbergmartin.com
(410) 727-6600

**Attorneys for Appellee Westlake Services, LLC**

I further certify that on the 28th day of December, 2015, I will cause the required number of bound copies of the foregoing Opening Brief of Appellant and Joint Appendix to be placed in the mail via USPS Priority Mail to be filed with the Clerk of this Court and to all case participants, at the above listed addresses.

 **/s/   Cory L. Zajdel**
*Counsel for Plaintiffs-Appellant*

35